

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
06/20/2017

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 16-36320 |
| **MARCUS S. THOMPSON and** | § | |
| **WENDY S. THOMPSON,** | § | **Chapter 7** |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| **CHRIS ALLEN LOUVIERE,** | § | |
| | § | |
| Plaintiff | § | **Adversary No. 17-3241** |
| | § | |
| v. | § | |
| | § | |
| **MARCUS S. THOMPSON and** | § | |
| **WENDY S. THOMPSON,** | § | |
| | § | |
| Defendants | § | |
| | § | |

<u>**MEMORANDUM OPINION REGARDING:  (1) CHRIS ALLEN LOUVIERE'S
MOTION FOR LEAVE TO REFILE COMPLAINT FOR DETERMINATION OF
DISCHARGEABILITY AND OBJECTION TO DEBTORS['] DISCHARGE PURSUANT
TO SECTION[S] 523 AND 727; AND (2) THE DEBTORS' EMERGENCY MOTION TO
DISMISS WITH PREJUDICE THE ADVERSARY COMPLAINT**</u>
**[Main Case Doc. No. 42 & Adv. Doc. No. 2]**

### I. INTRODUCTION

The practice of bankruptcy is very deadline oriented.  For example, any seasoned

bankruptcy attorney who represents creditors knows that there is a strict deadline for taking the

appropriate actions to prevent the discharge of a particular debt, or all of the debts, owed by the

debtor.  As one court has aptly stated: "[T]he deadline has been described as 'set in stone.'"

*Herman v. Bateman (In re Bateman)*, 254 B.R. 866, 878 (Bankr. D. Md. 2000) (internal citation

omitted).  The dispute at bar underscores that while this deadline is strict, it is not absolutely cast

1

in concrete; and that, under the right circumstances, a creditor who has not timely taken all of the appropriate steps may nevertheless be allowed to prosecute a suit to prevent discharge.

Now pending before this Court are two motions: (1) the Motion of Creditor Chris Allen Louviere ("Louviere") for Leave to Refile Complaint for Determination of Dischargeability and Objection to Debtors['] Discharge Pursuant to Section[s] 523 and 727 (the "Motion for Leave"), [Main Case No. 16-36320, Doc. No. 42]; and (2) the Emergency Motion of Marcus S. Thompson and Wendy S. Thompson (the "Debtors") to Dismiss With Prejudice the Adversary Complaint filed by Louviere (the "Motion to Dismiss"), [Adv. Doc. No. 2]. The Motion for Leave requests this Court to allow Louviere, even though he missed the deadline for initiating a proper adversary proceeding, to prosecute a complaint against the Debtors to prevent discharge of a judgment that Louviere obtained pre-petition or, alternatively, to prevent discharge of all the debts owed by the Debtors. The Motion to Dismiss requests that this Court bar Louviere from seeking such relief on the grounds that he failed to timely initiate a proper adversary proceeding against the Debtors.

Set forth below are this Court's Findings of Fact and Conclusions of Law made pursuant to Federal Bankruptcy Rules 9014 and 7052.[1] To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party. For the reasons set forth herein, this Court conditionally grants the Motion for Leave and denies the Motion to Dismiss.

---

[1] Any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure. Further, any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

## II. FINDINGS OF FACT

1.  On December 9, 2016, the Debtors filed a Chapter 7 petition, which initiated the above-referenced main case (the "Main Case"). [Main Case No. 16-36320, Doc. No. 1].

2.  On December 9, 2016, the Debtors filed the documents required by the Code, including their Schedules, Statement of Financial Affairs ("SOFA"), and Creditor Matrix. [*Id.*]. Among other creditors, the Debtors listed Louviere and set forth that his address is 6107 Guissemae Lane, Rosharon, Texas 77583. [*Id.* at p. 63 of 70]. On their Schedule E/F, the Debtors set forth that Louviere holds an undisputed liquidated debt of $22,000.00. [*Id.* at p. 24 of 70].

3.  On December 16, 2016, the Clerk of Court docketed the Notice of Chapter 7 Bankruptcy Case (the "Clerk's Notice"). [Main Case No. 16-36320, Doc. No. 11]. The Clerk's Notice, which is Official Form 309A, expressly set forth certain information about the Debtors' case. Germane to the dispute at bar, the Clerk's Notice expressly set forth the following information:

    a.  On the first page, the Clerk's Notice states that:

        i.  "This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully." [*Id.* at p. 1 of 2]. This language is set forth in bold type to highlight the importance of reading the entire two pages of information.

        ii. "The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a

3

particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information)." [*Id.*].

b.  On the second page, the Clerk's Notice states that:

   i.  The first meeting of creditors will be held on January 19, 2017. [*Id.* at p. 2 of 2].

   ii.  "[T]he deadline to object to discharge or to challenge whether certain debts are dischargeable" is "3/20/17." [*Id.*]. This language is set forth in bold type to highlight the deadline.

   iii.  "You must file a complaint:

   - if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or

   - if you want to have a debt excepted from discharge under 11 U.S.C. § 523(a)(2), (4), or (6)."

   iv.  "The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines." [*Id.*].

4.  On December 12, 2016, Leslie Adams ("Adams") filed a Notice of Appearance giving notice that she represents Louviere in the Main Case. [Main Case No. 16-36320, Doc. No. 15].

5.  On January 13, 2017, Adams, on behalf of Louviere, filed a motion for relief from the automatic stay (the "Motion to Lift Stay") to allow Louviere to proceed with collection efforts on a judgment that Louviere obtained pre-petition solely against one of the

4

Debtors, Marcus Thompson ("Thompson"). [Main Case No. 16-36320, Doc. No. 17]. The Motion to Lift Stay, by referencing exhibits attached to it, set forth in detail the factual background and relationship between Louviere and Thompson, including but not limited to: (a) the contract that Louviere and Thompson entered into for Thompson to construct a building on property owned by Louviere, [Main Case No. 16-36320, Doc. No. 17-1, p. 10 of 45]; (b) a review of the fraud that Thompson allegedly committed after the contract was signed, [*id.* at pp. 20, 25–36 of 45]; (c) the misrepresentations made by Thompson to Louviere, [*id.*]; (d) the funds that Louviere paid to Thompson, which Thompson then spent without performing under the contract that he had executed, [Main Case No. 16-36320, Doc. No. 17-4]; (e) the lawsuit that Louviere filed against Thompson in state court for breach of contract and fraud, [Main Case No. 16-36320, Doc. No. 17-1, p. 1 of 45]; and (f) the default judgment that Louviere obtained against Thompson in this lawsuit in the amount of $88,743.00 (the "Judgment"), [Main Case No. 16-36320, Doc. No. 17-3].

6.  On January 27, 2017, the Debtors filed a response opposing the Motion to Lift Stay. [Main Case No. 16-36320, Doc. No. 19].

7.  On February 7, 2017, this Court held a preliminary hearing on the Motion to Lift Stay. Ling E. Dai ("Dai"), an associate attorney from the Adams Law Firm, appeared at this hearing.  The Court set a final hearing for February 14, 2017.  [Main Case No. 16-36320, Doc. No. 20].

8.  On February 14, 2017, this Court held a final hearing on the Motion to Lift Stay.  Dai appeared for Louviere; Frank Steelman ("Steelman") appeared for the Debtors. Steelman objected to Louviere being allowed to prosecute the Motion to Lift Stay on

the grounds that Louviere's counsel had failed to comply with the applicable local rules

regarding the exchange of exhibits and the filing of the exhibit lists and witness lists.

The Court orally sustained his objection, and therefore orally dismissed the Motion to

Lift Stay.

9.     On February 16, 2017, this Court entered an order memorializing its dismissal of the

Motion to Lift Stay (the "Lift Stay Order"). [Main Case No. 16-36320, Doc. No. 23].

In the Lift Stay Order, this Court, in a footnote, set forth the following language:

> The Court reiterates what it stated orally on the record at the
> hearing held on February 14, 2017. Specifically, the Court wants to
> make it clear that dismissal of the Motion in no way bars Louviere
> from filing an adversary proceeding against Marcus Thompson or
> Wendy Thompson, or both of them, to request this Court to enter an
> order declaring that the judgment held by Louviere is a
> non-dischargeable obligation. [Doc. No. 11, p. 2 of 2]. However,
> Louviere must file this adversary proceeding by no later than March
> 20, 2017. Otherwise, Louviere will be barred from contending that
> the judgment is a non-dischargeable debt. *See, e g., In re Nutall*,
> 2009 WL 2460864 (Bankr. S.D. Tex. Aug. 11, 2009).

[Main Case No. 16-36320, Doc. No. 23, p. 2 n.1].

10.    On March 20, 2017, Adams, on behalf of Louviere, filed a document in the Main Case

entitled "Creditor Chris Louviere's Notice of Lawsuit and Request to Waive Service of

Summons" (the "Notice of Lawsuit"). [Main Case No. 16-36320, Doc. No. 31].

Additionally, on behalf of Louviere, Adams filed a pleading entitled "Complaint for

Determination of Dischargeability and Objection to Debtors['] Discharge Pursuant to

Section[s] 523 and 727 of the Bankruptcy Code" (the "Main Case Complaint"). [Main

Case No. 16-36320, Doc. No. 31-2]. The Main Case Complaint, which referenced

several exhibits attached to it, set forth in detail the factual background and relationship

between Louviere and Thompson, including but not limited to: (a) the contract that

6

Louviere and Thompson entered into for Thompson to construct a building on property owned by Louviere, [Main Case No. 16-36320, Doc. No. 31-3]; (b) a review of the fraud that Thompson allegedly committed after the contract was signed, [Main Case No. 16-36320, Doc. Nos. 31-6 & 31-9]; (c) the misrepresentations made by Thompson to Louviere, [Main Case No. 16-36320, Doc. Nos. 31-6 & 31-9]; (d) the funds that Louviere paid to Thompson, which Thompson then spent without performing under the contract that he had executed, [Main Case No. 16-36320, Doc. Nos. 31-4 & 31-7]; (e) the lawsuit that Louviere filed against Thompson in state court for breach of contract and fraud, [Main Case No. 16-36320, Doc. No. 31-2, p. 4 ¶ 16]; and (f) the Judgment, [Main Case No. 16-36320, Doc. No. 31-2, p. 5 ¶ 18].   The Main Case Complaint requested that this Court enter an order declaring the Judgment to be a non-dischargeable debt under § 523(a)(2)(A) and/or § 523(a)(4).   Alternatively, the relief sought was for this Court to enter an order denying the Debtors a discharge of all of their debts on the grounds that they had violated § 727(a)(4) by misrepresenting in their schedules the amount of their gross income and the balance of their checking accounts.  [*Id.* at p. 7 ¶ 27].

11.   On March 20, 2017, the legal assistant for Louviere's counsel, Adams, served the Main Case Complaint on the attorney for the Debtors, Steelman, by sending a copy of the pleading to him by telefax and electronic transfer.  [*Id.* at p. 8 of 8]; [Tape Recording, May 25, 2017 Hearing at 10:26:00–10:26:13 A.M.].   Additionally, Adams's legal assistant sent a copy of the Main Case Complaint to Steelman by certified mail, return receipt requested; the so-called "green card" introduced into the record reflects that Steelman's law office received this copy on March 27, 2017.  [Louviere's Ex. 2].

12.     On April 3, 2017, this Court, *sua sponte*, entered an order dismissing the Main Case

Complaint on the grounds that Adams, on behalf of Louviere, had failed to properly

seek relief by initiating an adversary proceeding against the Debtors pursuant to Rule

7001(6).   [Main Case No. 16-36320, Doc. No. 37].   Specifically, this Court stated the

following:

> On March 20, 2017, Chris Allen Louviere, a creditor of the estate,
> filed a pleading entitled: "Complaint for Determination of
> Dischargeability and Objection to Debtor[s]' Discharge Pursuant
> to Section[s] 523 and 727" (the "Complaint/Objection").   [Doc.
> No. 31]. The Complaint/Objection was filed in the main case. The
> Complaint/Objection seeks to prevent the discharge of a
> $88,743.00 debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and
> 727(a)(4).   Bankruptcy Rule 7001(6) expressly states that a
> proceeding to determine the dischargeability of a debt is an
> adversary proceeding.   Because an adversary proceeding must be
> prosecuted through the filing of a complaint and a service of
> summons in accordance with Bankruptcy Rules 7003 and 7004, the
> Complaint/Objection must be dismissed. Chris Allen Louviere can
> only obtain a judgment from this Court declaring that the
> $88,743.00 debt is non-dischargeable by filing a complaint with
> this Court, properly serving a summons on the Debtors, and paying
> the filing fee to open the adversary proceeding.

[*Id.*].

13.     On May 11, 2017, Adams, on behalf of Louviere, initiated an adversary proceeding

against the Debtors pursuant to Rules 7001 and 7003 by paying the filing fee of

$350.00, by submitting an adversary proceeding coversheet, and by filing a pleading

entitled "Complaint for Determination of Dischargeability and Objection to Debtor[s]'

Discharge Pursuant to Section 523 and Section[s] 727 of the Bankruptcy Code" (the

"Adversary Complaint").   [Adv. Doc. No. 1].[2]   The Adversary Complaint contains

---

[2] Adams attached to the Adversary Complaint a summons for each of the Debtors.  [Adv. Doc. Nos. 1-16 & 1-18].
Apparently, Adams believed that doing so would constitute a request for the Clerk's office to prepare the
summonses. She was mistaken.  A plaintiff's attorney must choose the appropriate "event" in the CM/ECF system
to properly request the Clerk of Court to prepare a summons.  Simply attaching a summons to a complaint will not

8

almost verbatim the same allegations in the Main Case Complaint that Louviere filed on March 20, 2017. Further, the relief sought in the Adversary Complaint is the same relief that Louviere sought in the Main Case Complaint: namely, to prevent the discharge of the Judgment, or, alternatively, to prevent the discharge of all of the Debtors' debts.

14.    Additionally, on May 11, 2017, in the Main Case, Adams, on behalf of Louviere, filed the Motion for Leave. [Main Case No. 16-36320, Doc. No. 42]. The Motion for Leave requests approval from this Court to allow Louviere to prosecute the Adversary Complaint. Stated otherwise, Louviere wants this Court to allow him to prosecute the Adversary Complaint as if his attorney had properly commenced an adversary proceeding on March 20, 2017 by filing this particular pleading, paying the filing fee, requesting the Clerk of Court to issue a summons for each of the Debtors, and then properly serving the summonses and the Adversary Complaint.

15.    On May 12, 2017, in the newly-commenced adversary proceeding, the Debtors filed the Motion to Dismiss. [Adv. Doc. No. 2].

16.    On May 24, 2017, Adams, on behalf of Louviere, filed a response opposing the Motion to Dismiss. [Adv. Doc. No. 24].

17.    On May 25, 2017, this Court held a simultaneous hearing on the Motion to Dismiss and the Motion for Leave.[3]  Only one witness testified: Ms. Gerardina Simmons

---

suffice. The Clerk's office does not review the documents attached to a complaint in order to devine that a plaintiff's counsel is requesting the Clerk's office to prepare a summons. Thus, because Adams did not use the proper "event," the Clerk's office has never prepared the summonses for the Debtors—which, of course, means that neither of the Debtors has ever been properly served with a summons and the Adversary Complaint.

[3] As of May 25, 2017, the Debtors had not filed a response opposing the Motion for Leave—although it was clear to this Court and to Louviere that the Motion to Dismiss contained the same arguments that would have been set forth in any response opposing the Motion for Leave. Eventually, on June 8, 2017, the Debtors filed a very brief response opposing the Motion for Leave. [Main Case No. 16-36320, Doc. No. 50].

("Simmons"), who is a legal assistant at the Adams Law Firm. The Court admitted two exhibits: Louviere's Exhibits 1 and 2. The Court then heard closing arguments from Adams and Steelman on behalf of their respective clients, and then took the matters under advisement.

### III. CREDIBILITY OF WITNESS

The Court finds that Simmons is a credible witness. She testified forthrightly about her filing of the Main Case Complaint on March 20, 2017, and the reasons that she failed to properly commence an adversary proceeding, request the issuance of summonses from the Clerk of Court, serve the summonses and the Adversary Complaint, and pay the filing fee. The Court gives substantial weight to her testimony.

### IV. CONCLUSIONS OF LAW

#### A. Jurisdiction

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(b). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The matter at bar is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because the resolution of this dispute affects the debtor-creditor relationship. Specifically, the resolution of the Motion for Leave and the Motion to Dismiss will help determine whether the future relationship between the Debtors and Louviere is one where the Debtors have obtained a

discharge of the Judgment held by Louviere or one where the Debtors have not obtained a discharge of the Judgment, thereby allowing Louviere to forever seek to collect the sums owed under the Judgment.    Additionally, this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because Louviere seeks to prevent the discharge of the obligation evidenced by the Judgment.  Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) because Louviere also seeks, in the alternative, to prevent the discharge of all of the debts owed by the Debtors. Finally, the issue at bar is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").    Here, a dispute over whether a creditor should be barred from prosecuting a complaint to determine dischargeability and/or an objection to discharge can only arise in a bankruptcy case.

**B. Venue**

Venue is proper under 28 U.S.C. § 1408(1) because the Debtors resided in the Southern District of Texas for the 180 days prior to the filing of their Chapter 7 petition.

**C. Constitutional Authority to Enter a Final Order**

Having concluded that this Court has jurisdiction over this dispute, this Court nevertheless notes that *Stern v. Marshall*, 564 U.S. 462 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders.  However, an order

11

denying a motion to dismiss an adversary proceeding is not a final order. *Strong v. W. United Life Assur. Co. (In re Tri-Valley Distrib.)*, 533 F.3d 1209, 1215 (10th Cir. 2008); *Helbling v. Josselson (In re Almasri)*, 378 B.R. 550, 553 (Bankr. N.D. Ohio 2007). Moreover, an order granting a motion for leave to file a complaint to determine dischargeability and an objection to discharge is not a final order. *See Stevens v. Brink's Home Sec., Inc.*, 378 F.3d 944, 946 (9th Cir. 2004) ("In sum, the district court's order permitting the plaintiffs to amend the complaint . . . is not a final order reviewable on appeal under 28 U.S.C. § 1291; nor is it reviewable as a collateral order."). Therefore, this Court concludes that there is no *Stern* concern regarding its entering separate orders denying the Motion to Dismiss and conditionally granting the Motion for Leave.

**D. Review of the Applicable Law Governing the Motion for Leave and the Motion to Dismiss, and the Parties' Arguments in Support of Their Respective Positions**

This dispute is governed by Rules 4007 and 4004. Rule 4007 is entitled "Determination of Dischargeability of a Debt" and concerns complaints to obtain a determination of the dischargeability of any one particular debt. Rule 4004 is entitled "Grant of Denial of Discharge" and concerns complaints objecting to the discharge of all of a debtor's debts.

Rule 4007(a) sets forth that "any creditor may file a complaint to obtain a determination of the dischargeability of any debt." There is no dispute that Louviere is a creditor, as he is the owner and holder of the Judgment. [Finding of Fact No. 5]; *In re Merlino*, 62 B.R. 836, 838 (Bankr. W.D. Wash. 1986) (finding a bank to be a creditor when it held a separate judgment against the debtor). Indeed, the Debtors listed him on their Schedule E as the holder of an undisputed debt, and they also included him on their Creditor Matrix. [Finding of Fact No. 2].[4]

---

[4] It is not entirely clear why the Debtors scheduled Louviere to hold an undisputed liquidated debt for $22,000.00. Perhaps they did so because this amount is the approximate total that Louviere had paid Thompson under the contract between the two of them upon which Louviere sued to obtain the Judgment. [Main Case No. 16-36320, Doc. No. 17-1, pp. 3–4 ¶ 11]. However, there is no question that the amount owed under the Judgment is

Rather, the dispute is whether Louviere has complied with Rules 4007(c), 4007(e), 4004(a), and 7001.

Rule 4007(c) states, in pertinent part, that "a complaint to determine dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." And, Rule 4007(e) sets forth that "[a] proceeding commenced by a complaint filed under this rule is governed by Part VII of these rules." Part VII of the Rules refers to Rules 7001 through 7087. The Advisory Committee Notes on Part VII state, in pertinent part, the following: "The rules in Part VII govern the procedural aspects of litigation involving the matters referred to in this Rule 7001 . . . These Part VII rules are based on the premise that to the extent possible practice before the bankruptcy courts and the district courts should be the same." Rule 7001 note (1987) (Advisory Committee Notes). Finally, Rule 7001(6) expressly sets forth that "a proceeding to determine the dischargeability of a debt" is an adversary proceeding.

Thus, taken together, the above-referenced Rules require a creditor, if he wants to prevent the debtor from obtaining a discharge of the specific debt that he holds, to initiate an adversary proceeding by filing a complaint no later than the 60th day following the first date set for the meeting of creditors.

In the Main Case, the first date set for the meeting of creditors was January 19, 2017. [Finding of Fact No. 3(a)(i)]. The 60th day after January 19, 2017 was March 20, 2017. Therefore, if Louviere wanted to attempt to prevent the discharge of the Judgment, he needed to initiate an adversary proceeding on or before March 20, 2017. Indeed, the Clerk's Notice

---

$88,743.00, not $22,000.00. In any event, it is clear that the Debtors do not dispute that they owe Louviere at least $22,000.00, so there is no question that even using the Debtors' figure, they admit that he is a creditor.

expressly set forth on page two, in bold letters, that "the deadline to object to discharge or to challenge whether certain debts are dischargeable" is "3/20/17." [Finding of Fact No. 3(b)(i)].

The deadline of March 20, 2017 imposed by Rule 4007 for objecting to the discharge of a specific debt is also the same deadline for objecting to the discharge of all of the Debtors' debts. This is so because of the language in Rule 4004(a), which states, in pertinent part, that "[i]n a Chapter 7 case, a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Moreover, just as with a complaint to determine dischargeability, Part VII governs a complaint objecting to discharge of all debts. Rule 4004(d). Indeed, Rule 7001(4) expressly sets forth that "a proceeding to object to or revoke a discharge" is an adversary proceeding. Thus, taken together, the above referenced Rules require a creditor, if he wants to prevent a debtor from obtaining a discharge of all of his debts, to initiate an adversary proceeding by filing a complaint objecting to discharge no later than the 60th day following the first date set for the meeting of creditors.

And, in fact, Louviere did file a pleading on March 20, 2017—the Main Case Complaint—that expressly objected to the discharge of the Judgment under §§ 523(a)(2) and/or (a)(4) and, alternatively, to the discharge of all of the Debtors' debts under § 727(a)(4). [Finding of Fact No. 10]. Thus, in his mind, Louviere had met the 60-day deadline imposed by Rules 4007(c) and 4004(a).

However, Louviere's problem is that the pleading that he filed on March 20, 2017 was filed in the Main Case, [*id.*]; he did not take the steps to properly initiate an adversary proceeding pursuant to Rules 7001(6), 7003, and 7004. And, because he filed a complaint in the Main Case instead of a complaint initiating an adversary proceeding, this Court, *sua sponte*, entered an order

dismissing the Main Case Complaint. [Finding of Fact No. 12]. In this order, the Court stated that:

> The Complaint/Objection was filed in the main case. The Complaint/Objection seeks to prevent the discharge of a $88,743.00 debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and 727(a)(4). Bankruptcy Rule 7001(6) expressly states that a proceeding to determine the dischargeability of a debt is an adversary proceeding. Because an adversary proceeding must be prosecuted through the filing of a complaint and a service of summons in accordance with Bankruptcy Rules 7003 and 7004, the Complaint/Objection must be dismissed. Chris Allen Louviere can only obtain a judgment from this Court declaring that the $88,743.00 debt is non-dischargeable by filing a complaint with this Court, properly serving a summons on the Debtors, and paying the filing fee to open the adversary proceeding.

[*Id.*].

In response to this Court's order, Louviere filed two pleadings: (1) the Motion for Leave; and (2) the Adversary Complaint. [Findings of Fact Nos. 13 & 14]. He filed these two pleadings on May 11, 2017—which was 52 days after the deadline of March 20, 2017 to object to the discharge of the Judgment and to object to the discharge of all of the Debtors' debts. The Adversary Complaint is virtually the same pleading that Louviere filed on March 20, 2017 in the Main Case (i.e., the Main Case Complaint). The Motion for Leave requests this Court to allow Louviere to refile the pleading that he filed in the Main Case on March 20, 2017 but, this time, to file it in the form of an adversary proceeding. Stated differently, the Motion for Leave requests that this Court bless Louviere's filing of the Adversary Complaint on May 11, 2017 and allow him to prosecute the Adversary Complaint as if it had been properly and timely filed as an adversary proceeding on March 20, 2017.

The Motion for Leave cites two grounds in support of this requested relief. One is that the failure of Louviere's counsel to properly commence an adversary proceeding on March 20, 2017 was due to excusable neglect. [Main Case No. 16-36320, Doc. No. 42, p. 4 ¶ 16]. The

other is that the Motion to Lift Stay and the Main Case Complaint were filed on or before the March 20, 2017 deadline, and gave actual notice to the Debtors of Louviere's intent to prevent the discharge of the Judgment; therefore, the Adversary Complaint filed on May 11, 2017 should relate back to the date of the filing of the Motion to Lift Stay (January 13, 2017) or at least to the date of the filing of the Main Case Complaint (March 20, 2017)—both of which dates fell within the March 20, 2017 deadline. [*Id.* at pp. 3–16 ¶ 14–17].

The Debtors vigorously oppose the Motion for Leave; indeed, they have filed the Motion to Dismiss in an effort to stop Louviere from attempting to prevent the discharge of the Judgment or the discharge of all of their debts. [*See* Finding of Fact No. 15]. The basis of the Motion to Dismiss is that Louviere missed the 60-day deadline imposed by Rules 4007(c) and 4004(a) to commence a proper adversary proceeding; and that therefore, the late-filed Adversary Complaint should be dismissed.

The Court now addresses these arguments.

**E.  Louviere Cannot Invoke the Doctrine of Excusable Neglect Under Rule 9006(b)**

Louviere adduced testimony from Simmons, a legal assistant at the Adams Law Firm, that: (1) she was responsible for filing the Main Case Complaint on March 20, 2017; (2) she believed that she did not need to obtain summonses from the Clerk of Court because she assumed that the Debtors' counsel would accept service; and (3) her failure to pay the filing fee to initiate the adversary proceeding was not intentional, as this was the first time that she had ever filed a complaint to determine dischargeability. [Tape Recording, May 25, 2017 Hearing at 10:23:41–10:25:57 A.M.]. Louviere cites Simmons's testimony in support of his argument that the failure to properly commence an adversary proceeding by March 20, 2017 was due to

"excusable neglect" and that therefore, pursuant to Rule 9006(b)(1), the Court should allow his

filing, although untimely, of the Adversary Complaint to stand.

Rule 9006(b)(1) expressly states, in pertinent part, that:

> [W]hen an act is required or allowed to be done at or within a
> specified period by these rules . . ., the court for cause shown may at
> any time in its discretion . . . (2) on motion made after the expiration
> of the specified period permit the act to be done where the failure to
> act was the result of excusable neglect.

Thus, Rule 9006(b)(1) does provide an avenue for a litigant to be able to assert a claim or

a defense despite having missed a deadline. *See, e.g.*, *Pioneer Inv. Serv. Co. v. Brunswick Assoc.

Ltd. P'ship*, 507 U.S. 380, 398 (1993) (holding that failure to file a timely proof of claim due to

the court's inconspicuous placement of the bar date in a notice regarding a creditor's meeting

was a result of excusable neglect); *In re Eagle Bus Mfg., Inc. v. Greyhound Lines, Inc.*, 62 F.3d

730, 739–40 (5th Cir. 1995) (holding that failure to file proof of claim was due in part to

confusion or ambiguity and supported finding of excusable neglect); *Harper v. Albertson's Inc.*,

No. Civ. A. 303CV1300WS, 2005 WL 2361953, at *2 (S.D. Miss. Sept. 26, 2005) (finding that a

court may excuse a non-answer and permit a late filed answer upon proper motion and

circumstances showing excusable neglect).  Here, Louviere's argument is that Simmons's

actions, taken as a whole, constitute "excusable neglect" that merit allowing him to proceed

forward and prosecute the Adversary Complaint even though it was filed beyond the 60-day

deadline.

Unfortunately for Louviere, he cannot avail himself of the "excusable neglect" doctrine

under Rule 9006(b)(3).  In *Neeley v. Murchison*, 815 F.2d 345 (5th Cir. 1987), the Fifth Circuit

emphasized that: "Rule 9006(b)(3) explicitly excepts Rule 4007(c) from the 'excusable neglect'

standard, permitting time enlargement 'only to the extent and under the conditions' stated in

Rule 4007." *Id.* at 346; *see also In re McGinnis*, 111 B.R. 585, 587 (Bankr. E.D. Tex. 1989) ("The court was influenced by the language of Bankruptcy Rule of Procedure 9006(b)(3), which explicitly excepted Rule 4007(c) from time enlargements except 'to the extent and conditions stated in [Rule 4007(c)].'").  Rule 9006(b)(3) also excepts Rule 4004(a) from the excusable neglect standard; therefore, the late filing of a complaint objecting to the discharge of all debts of a debtor cannot be cured through the doctrine of excusable neglect.

Accordingly, if Louviere is to defeat the Motion to Dismiss, he must do so upon some other principle.  Fortunately, for Louviere, such an avenue is available.

## F.   The "Actual Notice/Relation-Back" Exception to Rules 4007(c) and 4004(a)

The Fifth Circuit's opinion in *Covert v. McGuirt (Matter of McGuirt)*, 879 F.2d 182 (5th Cir. 1989), is instructive for ruling on the dispute at bar.  In *McGuirt*, Don Edward McGuirt ("McGuirt") filed a Chapter 7 petition on the eve of a trial in state court, where Charles Covert ("Covert") was suing him for fraud.  *Id.* at 182.  Wanting to go forward with the trial, Covert filed a motion to lift stay.  *Id.*  This motion contained recitations about the state court suit, but it contained no discussion about the factual circumstances of the alleged fraud claims.  *Id.* at 184. Soon thereafter, the bankruptcy court granted the motion, and therefore the stay was lifted and Covert was allowed to prosecute his claims in state court.  *Id.* at 182.

Approximately three weeks after the bankruptcy court modified the stay, the clerk of court issued a notice for the meeting of creditors; this notice set forth that the meeting would be held on July 12, 1986.  *Id.* at 182–83.  Thus, pursuant to Rule 4007(c), the deadline to file a complaint to determine dischargeability was 60 days later—i.e., September 10, 1986 (the "09-10-86 Deadline").  Covert, however, failed to file such a complaint by the 09-10-86 Deadline.  *Id.* at 183–84.  Rather, he filed his complaint on December 10, 1986—three months

after the 09-10-86 Deadline. *Id.* at 182. This complaint asserted that under § 523, McGuirt owed Covert a debt arising from fraud and that therefore this debt should be declared nondischargeable. *Id.* at 183 n.1. Because Covert failed to meet the 09-10-86 Deadline, the bankruptcy court dismissed his complaint. *Id.* at 183. Covert appealed, and the district court affirmed the bankruptcy court's ruling. *Id.* at 184. Covert then appealed to the Fifth Circuit.

Covert's argument on appeal centered around his motion to lift stay, which was filed three weeks prior to the 09-10-86 Deadline. Specifically, Covert contended that:

> [H]e satisfied rule 4007(c) by filing his motion for relief from the automatic stay [prior to the 09-10-86 Deadline] and that his belated objection should relate back to the date of the motion for relief. He asserts that the filing of the motion satisfied the primary purpose of rule 4007(c) of notifying the debtor of the existence and basis of an objection to discharge so as to enable the debtor to answer and defend against that objection.

*Id.* at 183. In making this relation-back argument, Covert pointed to cases involving Rule 4003(b), which establishes a 30-day deadline for challenging a debtor's claimed exemptions. *Id.* Covert cited these opinions to emphasize that some courts had departed from a strict construction of the deadline imposed by this rule: "These courts have reasoned that the failure of a creditor to file an objection within the prescribed period should not, and does not, waive that objection if the creditor, through other means, has provided actual notice to the debtor of the nature of the objections." *Id.* For Covert, if there was flexibility in application of Rule 4003(b), it followed that there should be flexibility in application of Rule 4007(c).

The Fifth Circuit could have simply rejected this argument out of hand. However, it chose not to do so. *Id.* at 183 ("Here, however, we need not determine whether such a notice-based exception would ever be appropriate in a section 4007(c) case in order to conclude that one would not be justified in this case."). Rather, it rejected Covert's argument that his

motion for relief from stay gave McGuirt sufficient actual notice of Covert's intention to challenge the dischargeability of any debt that might emanate from the state court lawsuit. *Id.* at 184. Indeed, the Fifth Circuit noted that the "motion for relief from the stay merely recited that 'the lawsuit involves numerous allegations of fraud and misrepresentation'" and that Covert needed to go into greater detail to prevail on his "actual notice" argument. *Id.* at 183. And then, perceiving that the "actual notice/relation-back" argument would inevitably arise in some future case, the Fifth Circuit expressly stated that: "We leave for another day the determination of whether such an exception would ever be justified in a rule 4007(c) case." *Id.* at 184. Finally, in language suggesting that this argument might well succeed under the right circumstances, the Fifth Circuit stated that: "[A]lthough no court has acknowledged a notice-based exception to rule 4007(c), a colorable argument in support of such an exception can be made by analogy to the rule 4003(b) cases. Hence, Covert escapes rule 38 sanctions in that he has made a 'reasonable argument for extension, modification, or reversal of precedent.'" *Id.* (quoting *Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir. 1988) (per curiam)).

Given the Fifth Circuit's carefully chosen language in *McGuirt*, the question now is whether the circumstances in the matter at bar are sufficient for Louviere's "actual notice/relation-back" argument to be extended beyond the existing precedent covering Rule 4003(b) to encompass Rule 4007(c) and Rule 4004(a). In *McGuirt*, the Fifth Circuit noted that "Covert is unable to identify any rule 4007(c) case in which such an exception has been acknowledged." *Id.* at 183. Since the Fifth Circuit issued its ruling in *McGuirt* in 1989, at least two courts have published opinions that have accepted the "actual notice/relation-back" argument with respect to Rule 4007(c). A discussion of these two cases is helpful in explaining this Court's decision in the dispute at bar.

20

1. Discussion of *In re Rand*, 144 B.R. 253 (Bankr. S.D.N.Y. 1992)

In *Rand*, the debtor filed his Chapter 7 petition on November 7, 1991, and notice was sent to all creditors that the deadline for filing an objection to the debtor's discharge or to the dischargeability of any particular debt was February 10, 1992. *Id.* at 255.   On January 3, 1992—more than a month before the deadline—a *pro se* creditor sent a letter to the bankruptcy judge objecting to the discharge of a debt that she asserted was owed to her by the debtor. *Id.* The creditor attached copies of documents in support of her claim, including a promissory note signed by the debtor and pleadings from a suit in state court that she had initiated against the debtor pre-petition seeking to obtain a judgment on the note; these pleadings alleged that the debtor had fraudulently induced her to loan him the sum of $5,000.00. *Id.*

Although the creditor sent this letter and documentation to the judge prior to the February 10, 1992 deadline, she did not commence an adversary proceeding by this deadline.  It was only on February 21, 1992—eleven days after the deadline—that she commenced an adversary proceeding by completing and filing both an adversary proceeding cover sheet (describing the claim and the statutory basis thereto) and a complaint, as well as paying the filing fee. *Id.* Upon taking these steps, the clerk's office issued the original summons, but the creditor did not serve the summons and complaint—she believed that the court would serve the debtor with process. *Id.*

It was not until April 20, 1992, that the creditor discovered that she, not the clerk's office, had the duty to serve the debtor. *Id.* Upon discovering her error, she obtained another summons from the clerk's office and on May 20, 1992, served the debtor with this summons. *Id.* However, she did not attach her complaint to the summons, and therefore the debtor did not receive the actual pleading. *Id.* The following month, on June 11, 1992, the creditor wrote the

debtor's counsel advising him that, as a *pro se* creditor, she was wholly unfamiliar with bankruptcy procedural law; that she had written a letter dated January 3, 1992 to the bankruptcy judge; and that this letter represented her complaint. *Id.* The creditor enclosed copies of the documents evidencing her claim in her letter to the debtor's counsel, but she did not enclose the January 3rd letter that she asserted was the complaint. *Id.*

Thus, as of mid-June of 1992—approximately four months after the February 10, 1992 deadline—neither the debtor nor his attorney had been served with either the January 3rd letter or the late-filed complaint of February 21, 1992. Under all of these circumstances, the debtor filed a motion to dismiss the adversary proceeding. *Id.* The debtor's motion sought dismissal on the grounds that the creditor had failed to initiate a proper adversary proceeding by filing a complaint, paying the filing fee, and obtaining a summons by the deadline of February 10, 1992. *Id.*

The bankruptcy court rejected this argument. The court held that the January 3rd letter constituted a complaint pursuant to Rule 7008(a) and, therefore, because it was filed 38 days prior to the deadline, it was timely filed. Specifically, the court's reasoning was as follows:

> Federal Rule of Civil Procedure 8(a), made applicable here by Federal Rule of Bankruptcy Procedure 7008, requires only a: "short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

> Additionally, Federal Rule of Bankruptcy Procedure 7008(a) requires the pleading to have a reference to the name, number and chapter of the case under the Code to which the adversary proceeding relates. [The creditor]'s January 3rd letter and its accompanying documents sufficiently laid out [the creditor]'s objection to the dischargeability of her debt to be deemed a complaint. The letter and documents apprised the court of the general nature and extent of her potential claim. The letter also contained a reference to the name, number and chapter of the

22

case to which this adversary proceeding relates. Thus, I conclude that [the creditor]'s letter constitutes a complaint.

*Id.* at 255–56.

It is noteworthy that the court in *Rand* emphasized that the January 3rd letter "apprised the court of the general nature and extent of [the creditor's] potential claim." *Id.* at 256. There is no discussion of the need to apprise the *debtor* of this claim. Rather, it was sufficient for the court in *Rand* that the creditor had at least notified the judge. The undersigned judge disagrees with the *Rand* court on this point and believes that given the language in *McGuirt*, the focus should be on whether the debtor also receives actual notice. Specifically, in *McGuirt*, the Fifth Circuit described the "actual notice" argument by articulating the creditor's position in this manner: "He asserts that the filing of the motion [for relief from the automatic stay] satisfied the primary purpose of rule 4007(c) of notifying the debtor of the existence and basis of an objection to the discharge *so as to enable the debtor* to answer and defend against that objection." *McGuirt*, 879 F.2d at 183 (emphasis added). Thus, in the Fifth Circuit's view, for the "actual notice/relation-back" argument to have any merit, the focus must be on whether the creditor gave notice to the *debtor* prior to the deadline that the creditor intended to object to discharge.

In any event, the key point from *Rand* is that the court refused to grant the motion to dismiss because, prior to the filing of the deadline, the creditor had taken some definitive action to prevent the discharge of her claim. Stated differently, the creditor had not sat on her hands up to the deadline and then, only after it had expired, taken action to prevent the discharge of her claim. Thus, the lesson from *Rand* is that even if a creditor does not properly commence an adversary proceeding within the 60-day deadline imposed by Rule 4007(c), if the creditor takes some action prior to the deadline—such as writing a detailed letter to the court attaching documents evidencing a claim acquired by fraud—then the "actual notice/relation-back"

23

argument that the Fifth Circuit described in *McGuirt* as a "colorable argument" might well carry the day for the creditor. In *Rand*, the court effectively held that the untimely-filed complaint of February 21, 1992 related back to the timely-submitted letter of January 3, 1992—and therefore constituted a timely-filed complaint, which meant that the creditor could go forward in an adversary proceeding to attempt to have the debt declared to be non-dischargeable. *Rand*, 144 B.R. at 256.[5]

2. Discussion of *In re Mendenhall*, Adv. No. 14-00004, 2014 WL 4494811 (Bankr. S.D. Ala. Sept. 10, 2014)

*In re Mendenhall* is another case where the creditor successfully lodged an "actual notice/relation-back" argument. There, the debtors filed a Chapter 7 petition on September 27, 2013; the first date set for the meeting of creditors was October 28, 2013; and therefore the 60-day deadline for objecting to discharge in general or a specific debt in particular was December 27, 2013. *Id.* at *1. The creditor was properly notified of the bankruptcy filing, but did not initiate a proper adversary proceeding by the December 27, 2013 deadline. *Id.*

However, what the creditor did do was file a pleading in the main case on December 23, 2013—i.e., four days before the deadline—entitled "Third Party Complaint." *Id.* This pleading alleged that a debt owed to the creditor was nondischargeable under § 523(a)(6). On December 26, 2013—i.e., one day before the deadline—the clerk's office issued a notice entitled "Notice of Filing Error—Incorrect Plan Event." *Id.* This notice set forth the following:

> Notice of Filing Error—Incorrect plan Event. This is an Adversary Proceeding. Document attached is not appropriate for the docket event selected. Filing terminated. No action has been taken by the court regarding this filing. **IF action is required of the court,** the document should be refiled using the proper CM/ECF Plan/Amended Plan Event. (related document(s) 18 Third–Party Complaint filed by Sadie G. Gamble).

---

[5] The court in *Rand* afforded the creditor the opportunity to file an amended complaint in order to spell out the fraud allegations with particularity. *Id.* at 259.

*Id.* (emphasis in original).

Fourteen days after this notice was issued—i.e., on January 9, 2014—the creditor commenced a proper adversary proceeding by paying the filing fee and by filing a "Complaint Challenging Dischargeability of Debt." *Id.* The creditor then filed an amended complaint eight days later on January 17, 2014; on June 30, 2014, the creditor requested that a summons be issued, which the clerk's office did on the same day; and then, on July 18, 2014, the complaint was served on the debtors. *Id.* The debtors then filed a motion to dismiss this adversary proceeding on the grounds that it was not filed by the 60-day deadline imposed by Rule 4007(c)—i.e., not filed by December 27, 2013. *Id.* The creditor responded by arguing that her January 9, 2014 late but properly-commenced adversary proceeding should relate back to her improper but timely-filed "Third-Party Complaint" filed in her main case on December 23, 2013. *Id.* at *2. The court then framed the dispute as follows: "The question for the Court is whether a timely complaint to initiate a nondischargeability adversary proceeding that is improperly filed in a debtor's main bankruptcy case gives the debtor sufficient notice of the action such that an untimely, but properly filed complaint relates back?" *Id.*

The court cited *Rand* in concluding that when a "late-filed complaint asserts a claim . . . that arose out of the same conduct, transaction, or occurrence set out . . . in the original pleading, it relates back to the improper, though timely filed pleading." *Id.* Specifically, the court in *Mendenhall* analyzed the issue as follows:

> Like the creditor in *Rand,* the Plaintiff in this case attempted to timely object to the Debtors' discharge of her debt. However, she did not click the necessary box in CM/ECF to commence an adversary proceeding. Her December 23rd filing did, however, comply with the requirements of FRCP 8(a). The filing referenced the name, number, and chapter of the Debtors' bankruptcy case. However, the filing did not comply with FRBP 7008 in that it did not contain a statement of

25

whether the proceeding was core or non-core.  Further, it was not properly styled. Despite these technical defects, the December 23rd filing was sufficient *to put the Debtors on notice that the Plaintiff was objecting to the discharge of her debt* under §§ 523(a)(6) and (a)(9). For this reason, the Court finds that the January 09, 2014 filing relates back to the December 23, 2013 filing and was therefore timely brought.  The Defendants' Motion to Dismiss is denied with respect to the Plaintiff's § 523(a)(6) claim.

*Id.* at *3 (emphasis added).

The lesson from *Mendenhall* is clear: even if a creditor does not properly commence an adversary proceeding within the 60-day deadline imposed by Rule 4007(c), so long as the creditor, prior to the deadline, files a pleading that contains sufficient information putting the debtor on notice that the creditor is attempting to object to the discharge of a particular debt, then the "actual notice/relation-back" principle can be used to overcome the failure to timely commence an adversary proceeding.

### 3. Application of *Rand* and *Mendenhall* to the Dispute at Bar

Application of *Rand* and *Mendenhall* leads this Court to conclude that because of the "actual notice/relation-back" doctrine, the Motion to Dismiss should be denied and the Motion for Leave should be conditionally granted.[6]  Indeed, the facts in the matter at bar are more compelling in favor of Louviere than the facts relating to the creditors in *Rand* and *Mendenhall*. This is so because Louviere filed not one, but two, detailed pleadings with this Court on or before the 60-day deadline of March 20, 2017 (the "03-20-2017 Deadline"), and he immediately served these pleadings on the Debtors, through their counsel, [Main Case No. 16-36320, Doc. No. 17, p. 6 of 6; Doc. No. 31, p. 3 of 3]—all of which gave actual notice to the Debtors that

---

[6] The condition associated with the granting of the Motion for Leave is described subsequently in this Opinion.

Louviere intended to seek an order from this Court declaring the Judgment to be non-dischargeable.[7]

First, on January 13, 2017—more than two months before the 03-20-2017 Deadline— Louviere filed the Motion to Lift Stay. [Finding of Fact No. 5]. The Motion to Lift Stay set forth in great detail the background of how Louviere obtained the Judgment against Thompson and why this debt is based on Thompson's fraud, [*id.*]; and then the Motion to Lift Stay expressly refers to §§ 523(a)(2)(A), 525(a)(4), and 727(a)(4)(A) in asserting that the debt held by Louviere is nondischargeable and that therefore this Court should lift the stay to allow Louviere to proceed with efforts to collect the Judgment, [Main Case No. 16-36320, Doc. No. 17]. The Debtors then filed a response opposing the Motion to Lift Stay. [Finding of Fact No. 6].

On February 7, 2017, this Court held a preliminary hearing on the Motion to Lift Stay. Louviere's attorney appeared at this hearing, and the Court set the matter for a final hearing for February 14, 2017. [Finding of Fact No. 7]. Then, on February 14, 2017, this Court held a final hearing on the Motion to Lift Stay. [Finding of Fact No. 8]. Both counsel for Louviere and counsel for the Debtors appeared at this hearing. [*Id.*]. Counsel for Debtors successfully argued that counsel for Louviere had failed to comply with the applicable local rules for exchanging exhibits and witness lists, and therefore this Court dismissed the Motion to Lift Stay. [*Id.*]. Nevertheless, there is no question that as of February 14, 2017, the Debtors, through their counsel, had received abundant notice of Louviere's position that the Judgment should be a non-dischargeable debt that he was entitled to collect at all times in the future. Indeed, in the order dismissing the Motion to Lift Stay, this Court included language that made it clear that its

---

[7] The Motion to Lift Stay gave actual notice to the Debtors only that Louviere wanted to prevent the discharge of the Judgment. [Main Case No. 16-36320, Doc. No. 17]. The Main Case Complaint gave actual notice to the Debtors not only that Louviere wanted to prevent the discharge of the Judgment but, in the alternative, that he wanted to prevent discharge of all of the Debtors' debts. [Main Case No. 16-36320, Doc. No. 31].

dismissal of the Motion to Lift Stay in no way barred Louviere from filing an adversary proceeding seeking to declare the Judgment a non-dischargeable obligation. [Finding of Fact No. 9]. So, once again, the Debtors were on notice—well before the 03-20-2017 Deadline—of Louviere's intention to prevent the discharge of the Judgment or, alternatively, of all of the debts owed by the Debtors. Under these circumstances, this Court finds that the complaint that Louviere filed on May 11, 2017 (i.e., the Adversary Complaint) relates back to January 13, 2017, i.e., the date that Louviere filed the Motion to Lift Stay; therefore, the Debtors received actual notice of Louviere's intention to prevent the Judgment, or, alternatively, all of the Debtors' debts, from being discharged more than two months prior to the 03-20-2017 Deadline.

Even if Louviere had not filed the Motion to Lift Stay, he filed an additional pleading prior to the 03-20-2017 Deadline that gave actual notice to the Debtors that he intended to prevent the Judgment from being discharged. On March 20, 2017—which was the last day for Louviere to timely take the appropriate action under Rule 4007(c) to prevent the discharge of the Judgment—Louviere filed the Notice of Lawsuit. [Finding of Fact No. 10]. Louviere attached to the Notice of Lawsuit the following: (1) a Waiver of the Service of Summons; and (2) the Main Case Complaint. [*Id.*]. Further, Louviere attached to the Main Case Complaint several exhibits: (1) evidencing the contract that Thompson and Louviere had entered into; and (2) describing the alleged fraud committed by Thompson. [*Id.*]. The Main Case Complaint contained detailed factual allegations regarding fraud and then requested relief under § 523(a)(2)(A), § 523(a)(4), and § 727(a)(4)(A). [*Id.*]. The Main Case Complaint leaves no doubt that Louviere gave actual notice to the Debtors by March 20, 2017 that he intended to sue to prevent the discharge of the Judgment, or, alternatively, to prevent the discharge of all of the Debtors' debts. The Main Case Complaint easily satisfies the Rule 7008 standards for pleading,

and just as the courts did in *Rand* and *Mendenhall*, this Court finds that the properly-filed but late complaint that initiated adversary proceeding 17-3241 on May 11, 2017 (i.e., the Adversary Complaint) relates back to March 20, 2017.[8]  Stated differently, this Court finds that Louviere has timely filed a complaint to determine the dischargeability of the Judgment or, alternatively, to object to the discharge of all of the Debtors' debts.

This Court recognizes that the arguments lodged by the Debtors have merit.  They contend that Louviere is barred from seeking to prevent the discharge of the Judgment because he failed to properly commence an adversary proceeding by March 20, 2017 despite: (1) the express language of Rule 4007(c), which imposes a 60-day deadline; (2) the bold language in the Clerk's Notice setting forth the 03-20-2017 Deadline, [Finding of Fact No. 3(b)(ii)]; and (3) being expressly warned by this Court of the need to do so, [*see* Finding of Fact No. 9].  Indeed, the Debtors point to this Court's footnote in the Lift Stay Order, which contained the following language: "However, Louviere must file this adversary proceeding by no later than March 20, 2017.  Otherwise, Louviere will be barred from contending that the judgment debt is a non-dischargeable debt."  [*Id.*].  There is no question that the Debtors are correct that Louviere did not properly commence an adversary proceeding by the 03-20-2017 Deadline.  However, as already discussed above, the "actual notice/relation-back" doctrine articulated in *McGuirt*, *Rand*, and *Mendenhall* is persuasive authority.  While there is no question that Louviere's attorney has been sloppy in complying with procedural requirements, this Court is simply unwilling to turn a blind eye to the "actual notice/relation-back" doctrine.

---

[8] As previously discussed, this Court has already found that the properly-filed but late Adversary Complaint of May 11, 2017 relates back to the date of the filing of the Motion to Lift Stay, which was January 13, 2017.  However, assuming that this finding is incorrect, the Court finds, in the alternative, that the late-filed Adversary Complaint relates back to the date of the filing of the Main Case Complaint, which was March 20, 2017.

Moreover, there is no question that if this Court bars Louviere from prosecuting the Adversary Complaint, this decision would be due entirely to his attorney's errors, and the resulting bar would be inconsistent with "the general bias in the federal rules in favor of resolution of disputes on the merits." *See Faulkner v. Eagle View Capital Mgmt. (In re Heritage Org., L.L.C.)*, Case No. 04-35574-BJH-11, 2011 WL 1793327, at *9 (Bankr. N.D. Tex. May 11, 2011) (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010)). Indeed, barring Louviere from prosecuting the Adversary Complaint would effectively constitute a dismissal of his suit with prejudice, and the Fifth Circuit has made it clear that dismissal of a claim with prejudice should only be done where: (1) the delay has been caused by the plaintiff himself, not his attorney; (2) there is actual prejudice to the defendant; or (3) the delay has been caused by intentional conduct. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008). The record before this Court reflects that the delay has been caused solely by Louviere's counsel and her legal assistant (i.e., Simmons), not by Louviere at all. [*See* Tape Recording, May 25, 2017 Hearing at 10:23:41–10:25:57 A.M.]. Further, there is nothing in the record to indicate that there will be any prejudice to the Debtors by allowing Louviere to prosecute the Adversary Complaint; they are represented by capable counsel who can defend them. Finally, the record before this Court reflects that the failure of Louviere's counsel and her legal assistant (i.e., Simmons) to comply with the applicable bankruptcy rules was not intentional. [*Id.*]. Indeed, Simmons, who gave very forthright and credible testimony, expressly stated that this was her first time filing a complaint and that her errors were not intentional. [Tape Recording, May 25, 2017 Hearing at 10:23:41–10:25:57 A.M.]. The Court believes her. Accordingly, while the Debtors' arguments have merit, they are not enough to overcome the "actual notice/relation-back" doctrine, the

public policy of resolving disputes on their merits, and the absence at this time of any factor favoring a dismissal of the Adversary Complaint with prejudice.

For all of the reasons set forth above, this Court holds that the Adversary Complaint relates back to the date of the filing of the Motion to Lift Stay (January 13, 2017) or, alternatively, to the date of the filing of the Main Case Complaint (March 20, 2017). This holding necessarily means that the Adversary Complaint is timely and therefore can be prosecuted—so long as the Debtors comply with all other procedural requirements. They have yet to fulfill one of these requirements, as discussed below.

### G. Louviere Still Needs to Obtain a Summons for Each of the Debtors From the Clerk's Office and Serve the Summonses, Together With the Adversary Complaint, Pursuant to Rule 7004

The Debtors also argue that the failure of Louviere's attorney to obtain and serve summonses on the Debtors and their attorney is fatal. They are incorrect. Bankruptcy Rule 7004(a)(1) provides that Federal Rule of Civil Procedure 4(m) applies in adversary proceedings. Federal Rule of Civil Procedure 4(m), which governs this service of process issue, reads, in pertinent part, as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In the first instance, this Court has held that the Adversary Complaint relates back to the date of the filing of the Motion to Lift Stay, which is January 13, 2017. There is no question that Louviere did not serve each of the Debtors with a summons and a copy of the Adversary Complaint within 90 days of January 13, 2017. In the alternative, this Court has held that the Adversary Complaint relates back to the date of the filing of the Main Case Complaint, which is

March 20, 2017. As of the date of this Opinion, 90 days have now passed since March 20, 2017, and Louviere has yet to serve each of the Debtors with a summons and a copy of the Adversary Complaint as required by Federal Rule of Civil Procedure 4(m). Indeed, this Court's review of the docket sheet as of June 20, 2017 (i.e., the date of this Memorandum Opinion) reflects that Louviere's counsel has not ever requested the Clerk of Court to issue a summons for each of the Debtors even though his counsel commenced an adversary proceeding by filing the Adversary Complaint on May 11, 2017 and paying the filing fee. [Finding of Fact No. 13]. Thus, Louviere's counsel has not properly served the summonses and the Adversary Complaint by the 90th day following March 20, 2017.

Federal Rule of Civil Procedure 4(m) requires this Court to extend the time for service "for an appropriate period" if "the plaintiff shows good cause for the failure." Here, however, Louviere has failed to show good cause. Based upon the testimony given by Simmons, she assumed that the Debtors' counsel (Steelman) would accept service, [Tape Recording, May 25, 2017 Hearing at 10:23:41–10:25:57 A.M.], but she was incorrect in making this assumption. And, there was absolutely no evidence introduced into the record that Steelman had ever indicated that he would accept service; indeed, Simmons admitted that she had not spoken with Steelman about this issue.[9] [*Id.*]. Under these circumstances, Louviere has failed to establish "good cause." *Gartin v. Par Pharm. Co.*, 289 Fed. App'x. 688, 692 (5th Cir. 2008) ("This 'good cause' under Rule 4(m) requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually

---

[9] Federal Rule of Civil Procedure 4(d) does not require a defendant to comply with a plaintiff's request that the defendant waive service. *Weldon v. Elec. Data Sys. Corp.*, 138 Fed. App'x 136, 138 (11th Cir. 2005); *Dietz v. Quality Loan Serv. Corp. of Wash.*, No. C13-5948 RJB, 2014 WL 4546953, at *1 (W.D. Wash. Sept. 12, 2014). The only penalty a defendant faces for not waiving service is that he might have to reimburse the plaintiff for the costs that the plaintiff incurred in effectuating service. *Weldon*, 138 Fed. App'x at 138; *Rick's Cabaret Intern., Inc. v. Indemnity Ins. Corp.*, Civ. Act. No. H-11-3716, 2012 WL 208606, at *4 (S.D. Tex. Jan. 24, 2012) (awarding plaintiffs $115.00 for having to pay two process servers to effectuate service on a defendant who had declined to waive service).

does not suffice.'") (quoting *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)).   Thus, Louviere cannot obtain an extension beyond the 90-day deadline to serve process based upon a showing of good cause.   However, the analysis does not stop here.

Federal Rule of Civil Procedure 4(m) expressly states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant *or order that service be made within a specified time*." (emphasis added).   Courts have construed the emphasized language to mean that the rule gives a court discretionary power to extend the time for service even if the defendant cannot show good cause. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("We agree with the majority of circuits that have found that the plain language of [Federal] [R]ule [of Civil Procedure] 4(m) broadens a district court's discretion by allowing it to extend the time for service even when a plaintiff fails to show good cause."); *In re Heritage Org., L.L.C.*, 2011 WL 1793327, at *28.   Indeed, the Fifth Circuit has strongly suggested that a discretionary extension is particularly warranted if dismissal of the suit for lack of service would bar the plaintiff from subsequently refiling due to a statute of limitations. *Millan*, 546 F.3d at 325.

Here, if this Court granted the Motion to Dismiss due to failure to properly serve the summonses and the Adversary Complaint within the 90-day deadline, Louviere would be barred from refiling because the time in which to file an action to establish the non-dischargeability of the Judgment, or to prevent discharge of all of the Debtors' debts, will have expired—which is effectively the same result when a statute of limitations takes effect. *In re Cole*, 142 B.R. 140, 145 (Bankr. N.D. Tex. 1992) ("However, the court decided that in *Bade* a dismissal would in fact be prejudicial since the time in which to file an action to establish the non-dischargeability of a debt had expired."); *In re Deresinski*, 214 B.R. 35, 38 (Bankr. M.D. Fla. 1997) (denying the

debtor's motion to dismiss, reasoning that "[a]lthough, the bar date is not technically considered a statute of limitations, the fact that it prevents the filing of a complaint to determine dischargeability beyond a certain date, causes it to operate in effectively the same manner.").

At this point, the Court will not preclude Louviere from prosecuting the Adversary Complaint solely because of the sloppiness of his counsel in complying with the applicable rule for serving the summonses and the Adversary Complaint on the Debtors. *In re Deresinski*, 214 B.R. at 38 ("Plaintiff should not be precluded from pursuing its [§§ 523(a)(4) and (a)(6)] claims solely because of the actions of its counsel.").   To grant the Motion to Dismiss "would elevate the technicality of service of process over the reality that the Debtor[s] can be served properly and that [they, through their attorney have] actual notice of the [Main Case Complaint] despite the improper service." *In re Daboul*, 82 B.R. 657, 661 (Bankr. D. Mass. 1987).  Thus, exercising its discretion, this Court will give Louviere's counsel until July 14, 2017 to properly serve each of the Debtors with a summons and the Adversary Complaint pursuant to Rule 7004.

However, if Louviere's counsel fails to properly serve the summonses and the Adversary Complaint by July 14, 2017, then this Court will hold a hearing and, absent a showing of extraordinary circumstances, dismiss the adversary proceeding—which will effectively constitute a dismissal with prejudice.  The Court will take this approach because if Louviere's attorney cannot now take the routine steps of obtaining the summonses from the Clerk of Court and effectuating service of the summonses and the Adversary Complaint pursuant to Rule 7004 by July 14, 2017, then the Debtors will be prejudiced—which is one of the grounds for dismissal with prejudice according to the Fifth Circuit. *Millan*, 546 F.3d at 326.  This is so "[b]ecause the public policy behind a Chapter 7 bankruptcy is to give a debtor a 'fresh start.'" *In re Abraham*, Adv. No. 10-03227, 2014 WL 3406513, at *9 (S.D. Tex. July 7, 2014).  And, as the Fifth Circuit

has stated, "the heart of this goal is embodied in § 727's discharge provisions." *In re Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991). Here, the Debtors filed their Chapter 7 petition on December 9, 2016, [Finding of Fact No. 1], and on March 2, 2017, the Chapter 7 trustee concluded the meeting of creditors, [*see* Docket Entry on Mar. 6, 2017]. Thus, more than three months have now passed, and yet the Debtors have not received their discharge because the dispute over whether Louviere can prosecute the Adversary Complaint remains pending. Each day that passes without a resolution as to whether Louviere is going to be able to prosecute the Adversary Complaint further prejudices the Debtors. Given the strong public policy of providing debtors in a Chapter 7 with a fresh start, it is time for Louviere—or, more accurately, his counsel—to properly effectuate service or lose the opportunity to prosecute the Adversary Complaint.

In the Motion for Leave, Louviere argues that allowing him leave to prosecute the Adversary Complaint does not cause any undue delay or prejudice to the Debtors because "there is another adversary proceeding pending before the Court based on the same or similar set of facts or circumstances." [Main Case No. 16-36320, Doc. No. 42, p. 4 ¶ 17]. Louviere is incorrect. There was, at one time, another adversary proceeding pending against the Debtors seeking to prevent the discharge of a specific debt under § 523(a). [Adv. Proc. No. 17-03151, Adv. Doc. No. 1]. However, after the plaintiffs in this adversary proceeding properly served each of the Debtors with a summons and their complaint, they entered into an Agreed Non-Dischargeable Judgment on May 11, 2017, [Adv. Proc. No. 17-03151, Adv. Doc. No. 9]— and soon thereafter the Clerk of Court closed this adversary proceeding. So, the only adversary proceeding remaining at this point is Louviere's Adversary Complaint, and it is high time that his counsel take the necessary steps to obtain and serve the summonses and the Adversary

Complaint pursuant to Rule 7004. If his counsel fails to do so by July 14, 2017, Louviere will suffer the consequences of his attorney's failure to take these steps:[10] the Adversary Complaint will be dismissed; he will be forever barred from seeking to prevent the discharge of the Judgment or any of the Debtors' debts; and the Debtors will receive their general discharge and therefore have their "fresh start"—except for still being liable for the Agreed Non-Dischargeable Judgment that they entered into in Adversary Proceeding 17-03151. In sum, the "fresh start" policy at some point has to trump the policy of resolution of disputes on their merits. Here, the point in time will be 11:59 P.M. on July 14, 2017.

## V. CONCLUSION

In *In re Nutall*, No. 09-32525-H4-7, 2009 WL 2460864 (Bankr. S.D. Tex. Aug. 11, 2009), a creditor filed a complaint to determine dischargeability of a particular debt two days after the filing deadline imposed by Rule 4007(c). Aside from filing this pleading two days after the deadline, the pleading was also filed as a contested matter in the main case rather than as an adversary proceeding as required by Rules 7001(6) and 7003. The creditor had filed no pleadings whatsoever prior to the expiration of the 60-day deadline imposed by Rule 4007(c), and therefore no "actual notice/relation-back" argument could be made on behalf of this creditor. Based upon existing case law, the undersigned judge dismissed the complaint because it was untimely. The undersigned judge stands by this ruling, and under the same facts would issue the same ruling today.

---

[10] An attorney's actions are imputed to the client. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 396, 113 S. Ct. 1489, 1499, 123 L.Ed. 2d 74 (1993) ("[W]e have held that clients must be held accountable for the acts and omissions of their attorneys"); *In re Moser*, 347 B.R. 471, 472 (Bankr.W.D.N.Y.2006) ("As a general rule, the actions and inactions of an attorney are imputed to a client . . . the action 'of counsel is imputed to his or her client, who is bound thereby, under the rule that the acts and omissions of an attorney acting within the scope of his or her authority are regarded as the acts of the person he or she represents.' ") (citing 7 Am. Jur. 2d Attorneys at Law, § 157 (1997)).

The circumstances in the matter at bar, however, are different from those in *Nutall*. Here, the creditor—Louviere—took steps prior to the 03-20-2017 Deadline in an effort to ensure that the Judgment was not discharged. Thus, by the time the 03-20-2017 Deadline had passed, Louviere had put the Debtors on actual notice that he intended to prevent the Judgment from being declared non-dischargeable or, alternatively, that all of the Debtors' debts should be declared non-dischargeable. Thus, even though Louviere did not strictly comply with the applicable rules for filing and serving process on the Debtors, and paying the filing fee, he nevertheless has convinced this Court that the complaint he properly, but untimely, filed on May 11, 2017 (i.e., the Adversary Complaint) should relate back to the complaint that he improperly, but timely, filed on March 20, 2017 (i.e., the Main Case Complaint).[11] Thus, the first of the three requirements for the proper commencement and prosecution of an adversary proceeding has been satisfied. *McMillan v. Schmidt (In re McMillan)*, 614 Fed. App'x 206, 212 (5th Cir. 2015) ("An adversary proceeding is initiated with a summons and complaint.") (citations omitted); *In re Ballard*, 502 B.R. 311, 320 (Bankr. S.D. Ohio 2013) ("An adversary proceeding is commenced through the filing of a complaint and requires the service of the complaint with a summons.").

The docket sheet for the adversary proceeding that was opened on May 11, 2017 reflects that Louviere did, in fact, pay the filing fee of $350.00 on this same day. [Finding of Fact No. 13]. Thus, the second of the three requirements for the proper commencement of an adversary proceeding has been satisfied.[12]

---

[11] *See supra* note 8.

[12] 28 U.S.C. § 1930(b) provides that "[t]he Judicial Conference of the United States may prescribe additional fees in cases under title 11 of the same kind as the Judicial Conference prescribes under section 1914(b) of this title." The Judicial Conference has in fact established that the fee for initiating an adversary proceeding is $350.00. The current Bankruptcy Court Miscellaneous Fee Schedule issued in conjunction with 28 U.S.C. § 1930 sets forth that the fee for filing a complaint is $350.00. Granted, the failure to pay a filing fee is not jurisdictional, *Faulkner*, 2011 WL 1793327, at *23–24, but nevertheless the fee should be paid, and here, Louviere did pay it on May 11, 2017.

That leaves only the third requirement to be fulfilled. The docket sheet and the testimony of Simmons indicate that counsel for Louviere has not properly served the summonses and the Adversary Complaint pursuant to Rule 7004. Indeed, Louviere's counsel has not ever properly requested the Clerk of Court to prepare the summonses. [Finding of Fact No. 13]. Thus, the third requirement has not yet been fulfilled. *In re Ballard*, 502 B.R. at 320 ("An adversary proceeding is commenced through the filing of a complaint *and requires the service of the complaint with a summons.*") (emphasis added). The Court will give counsel for Louviere until July 14, 2017 to properly request that the Clerk's office issue summonses for the Debtors— which can be done through using the correct "event" in the CM/ECF system—and then to serve the summonses and the Adversary Complaint pursuant to Rule 7004. If counsel for Louviere timely completes this procedural requirement by July 14, 2017, then the Court will allow Louviere to prosecute the Adversary Complaint and will issue an amended scheduling order that will supersede the scheduling order that this Court docketed on May 15, 2017. [*See* Adv. Doc. No. 3]. However, if counsel for Louviere fails to properly serve the summonses and the Adversary Complaint by July 14, 2017, then this Court will set a hearing and, absent a showing of extraordinary circumstances, dismiss the Adversary Complaint, which will have the effect of being a dismissal with prejudice to refiling. At some point, this Court has to draw a procedural line of demarcation over which Louviere's counsel cannot step. July 14, 2017 now represents this line—or, more accurately, this deadline.[13]

---

[13] The Court reminds Louviere's counsel that not only must the summonses and the Adversary Complaint be properly and timely served; she must complete and file with the Clerk of Court the certificate of service certifying that she served each of the Debtors with a summons and the Adversary Complaint. The certificate of service for each summons must be filed by July 14, 2017.

Separate orders denying the Motion to Dismiss and conditionally granting the Motion for Leave will be entered on the docket simultaneously herewith.

Signed on this 20th day of June, 2017.

Jeff Bohm
United States Bankruptcy Judge